**William J. LEWIS, Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION and Robert S. Adams, Defendants.**

**Civ. No. 73–55.**

United States District Court, D. Oregon.

May 31, 1974.

---

Gary K. Jensen, Dwyer & Jensen, P. C., Eugene, Or., for plaintiff.

Malcolm F. Marsh, Clark, Marsh & Lindauer, Salem, Or., for defendants.

## OPINION

BURNS, Judge:

On the surface, this is a garden-variety diversity case involving a claim by the Plaintiff for general and punitive damages for breach of an employment contract. However, beneath the surface, Defendants' motion for summary judgment presents a collateral estoppel question of substantial importance. As a result, after the parties themselves had thoroughly briefed the collateral estoppel question, I invited several amicus briefs.

Plaintiff Lewis was employed by Defendant International Business Machines (IBM) as a salesman for several years, until he terminated his employment with IBM's Salem, Oregon, office in July, 1972. Lewis claims that he was forced to terminate his employment because of wrongful conduct by Defendant Adams, IBM's supervisor in the area. Essentially, Lewis claims that Adams, over a period of time, wrongfully and maliciously reduced Lewis' sales territory, thereby reducing the possibilities of his earnings so substantially as to, in effect, force him to quit. Lewis claims that IBM ratified this tortuous conduct and, hence, bases one claim on breach of the employment contract, and the second claim upon a theory of willful interference with contractual relations produced by Adams' conduct and ratified by IBM.

Following termination, Lewis applied for unemployment compensation benefits pursuant to the provisions of ORS Chapter 657. After appropriate administrative proceedings by the Employment Division of the State Department of Hu-

man Resources, Lewis was denied those benefits because his unemployment was "due to [his] having left work voluntarily without good cause." Defendants contend, as a result, that Lewis is collaterally estopped from maintaining these claims. This assertion forms the basis for the Defendants' motion for summary judgment.

Lewis originally applied for unemployment benefits on October 24, 1972. His application was granted on November 9, 1972. On November 16, 1972, IBM requested a hearing to challenge the award of unemployment benefits. Because Lewis resided in Nevada at the time, a two-part hearing was conducted. The first part of the hearing took place in Carson City, Nevada, November 30, 1972, at which time Lewis appeared without counsel and IBM appeared by counsel. The second part of the hearing occurred in Salem, Oregon, on December 19, 1972, at which time only Adams and counsel for IBM appeared. Following the second part of the hearing the referee rendered the decision referred to above. His decision makes clear that he considered and rejected Lewis' claim that an improper reduction in his sales territory by IBM compelled his termination:

> "The claimant did not establish that the above work was unsuitable, nor that he had a compelling personal reason for leaving his work. The reason the claimant's earnings were down in 1970 was not because of any territory having been taken from claimant and given to another salesman. The reason was that the slump in the national economy affected claimant's earnings adversely just as it had affected the earnings of most IBM salesmen throughout the U.S." Referee Decision in Case No. 73–1529, In The Matter Of William James Lewis.

Because this is a diversity case, Oregon law controls the question presented. United States v. United Air Lines, 216 F.Supp. 709, 725–729 (E.D.Wash., D. Nev., 1962) aff'd as to collateral estop-

pel, sub nom. United Air Lines v. Wiener, 335 F.2d 379, 404 (9th Cir. 1964). *See* Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 325, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

 The term "collateral estoppel" refers to the rule preventing relitigation of a particular issue or determinative fact which was necessarily or actually decided by a previous decision of a different cause of action. The party sought to be estopped must have been a party to, or in privity with a party to, the prior litigation, and must have had a full, fair and complete opportunity to litigate the issue in question in the prior litigation. Furthermore, the rule will not be applied where unfairness or violations of public policy will result. Bahler v. Fletcher, 257 Or. 1, 474 P.2d 329 (1970); Holmgren v. Westport Towboat Co., 260 Or. 445, 490 P.2d 739 (1971). The doctrine serves the dual purpose of preventing harassment of successful litigants and protecting the public's interest in preserving judicial resources by preventing relitigation of matters once decided. Bahler v. Fletcher, *supra*, 257 Or. at 6, 474 P.2d 329.

 The majority of courts at one time rejected the application of collateral estoppel or res judicata to administrative decisions. In recent years, however, these doctrines have gained increasing recognition in administrative law. Willamette View Manor v. Peet, 252 Or. 142, 448 P.2d 546 (1968); Davis, Administrative Law Text 361 (3rd ed. 1972). In the administrative law context, the application of these doctrines must necessarily be flexible. They "should be applied to some proceedings, modified for some, and rejected for others." Davis, Administrative Law Text, *supra* at 371. See Paramount Transport Systems v. Teamsters Local 150, 436 F. 2d 1064 (9th Cir. 1971).

Attempts to apply collateral estoppel or res judicata on the basis of administrative decisions arise in various contexts. In some cases these doctrines are applied

by the agency itself to foreclose a party from relitigating a matter the agency has previously decided. Willamette View Manor v. Peet, *supra*. In other cases, such as the instant one, a litigant seeks to rely on an agency determination to foreclose the relitigation of a particular issue in a civil action between private parties. Paramount Transport Systems v. Local 150, *supra*.

In *Willamette View Manor*, the plaintiff, a home for the aged, petitioned the Department of Employment for a declaration that it was not an employer, a declaration which would have exempted the plaintiff from various statutes and regulations regarding employers. The Department denied the petition. Approximately five years later, the plaintiff applied again for the same declaration. The agency dismissed the application on the ground that the matter had been decided during the proceedings five years earlier. The Oregon Supreme Court held that the dismissal was proper, relying on an Oregon statute and an absence of any significant new matter in the second petition.

In *Paramount Transport Systems* the plaintiff sought a summary judgment on the issue of liability in an unfair labor practice action on the basis of a final decision in its favor on an unfair labor practice charge it filed with the National Labor Relations Board. The factual bases for the charge and the civil action were identical. The Ninth Circuit affirmed the lower court's decision granting the motion. However, a prior adverse decision by an administrative agency or arbitrator will not preclude a plaintiff seeking relief under Title VII of the Civil Rights Act of 1964, because of the special purpose of the Act. Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

▮ The parties cite no Oregon cases where the doctrine of collateral estoppel has been applied in a factual context similar to the instant case. Cases may arise where the Oregon courts would hold that a determination of a particular issue by an administrative agency would foreclose litigation of that issue in a civil action between private parties. However, I do not think they would apply the doctrine in the instant case, and therefore, I will not do so. The three amicus briefs agree with my conclusion.

"If actual unfairness would result, under all the circumstances of the particular case, collateral estoppel should not be applied . . . ." Bahler v. Fletcher, *supra*, 257 Or. at 11, 474 P.2d at 334.[1] The maximum benefit amount at stake in the Employment Division proceedings was $1,612.00. In the instant case, Lewis seeks approximately $500,000.00 in damages. Disregarding any consideration relevant to the fact that the prior proceedings were before an administrative agency rather than a court, the difference in the amount in controversy in the two proceedings raises the issue of whether considerations of fairness prevent the application of collateral estoppel. Where relatively small amounts are at stake, the incentive to vigorously litigate the matter may be small. Bahler v. Fletcher, *supra*, 257 Or. at 10, 474 P.2d 329.

In this case, three undisputed facts indicated that Lewis lacked an incentive to vigorously litigate his application for unemployment compensation. First, he was not represented by counsel at any of the hearings, although the applicable procedures permit such representation. Second, he made no appearance at the second part of the two-part hearing described above. Such an appearance would have required travel from Nevada or retention of counsel. Either alternative would have been costly in relation to the possible benefits. The amicus briefs point out that relatively small

---

1. The rule in federal courts is identical: "It has been recognized that the doctrine should not be exercised in such a manner as to work an injustice." Title v. Immigration and Naturalization Service, 322 F.2d 21, 24 (9th Cir. 1963).

amounts involved in unemployment proceedings normally prohibit employment of counsel as a practical matter. Finally, he failed to exercise his right to have the referee's decision reviewed by the Employment Appeals Board. *See* ORS 657.275.

If Plaintiff foresaw that his civil action could be precluded by the outcome of the Employment Division proceedings and failed to adequately protect his position, considerations of fairness would not weigh so heavily in his favor. However, no evidence suggests Plaintiff expected the result Defendants seek. Furthermore, he had no reason to expect that collateral estoppel could be raised in the context of the instant case. The novelty of the issue presented demonstrates that prior Oregon case or statutory law gave no indication that the result sought here would obtain. The Employment Division's Notice of Hearing informs a claimant that Oregon law provides that the information in a claim file is confidential and only for use in connection with the claim.[2] This statement might suggest that information regarding employment proceedings and their outcome could not be used in a civil action.

The elements of lack of incentive to vigorously litigate and lack of foreseeability combine to compel the conclusion that unfairness would result if the doctrine of collateral estoppel is applied to foreclose Plaintiff's action.

While the subject matter of this action does not require this Court to abstain from exercising jurisdiction, see Bacon v. Bacon, 365 F.Supp. 1019 (D. Or.1973) (Domestic Relations), the effect that a ruling on an issue of state law may have on state administrative procedures should not be ignored by a federal court. The brief submitted by the State of Oregon describes the typical unemployment compensation hearing which involves issues similar to those presented by Lewis' claim. The average hearing lasts forty-five minutes. The referees who conduct the hearings are not necessarily lawyers. Over six thousand hearings were conducted during the fiscal year 1972–73.[3] The State anticipates that a decision in favor of Defendants would cause an increase in representation by counsel in Employment Division hearings with a resulting increase in the length and complexity of the hearings. Current Employment Division staffing levels would be inadequate to handle this burden. In the absence of clear authority from the state courts, this Court will not inflict the hardship that could result by making a state agency's hearings legal battlegrounds for the indirect resolution of claims involving amounts substantially larger than the agency was designed to process.

## CONCLUSION

Defendants have not been subjected to harassment from an unsuccessful litgant, an experience the doctrine of collateral estoppel seeks to prevent. No court is more aware than this one of the significant problems that judges and litigants face as the result of ever increasing caseloads without a corresponding increase in the number of judges or other judicial resources. Nevertheless, to allow the principle of judicial economy to prevail in this case would work a substantial injustice on the Plaintiff, and could adversely affect the administration of Oregon's unemployment compensation

---

2. Apparently, this statement refers to ORS 657.665. I make no ruling as to whether this statute prohibits the introduction of any of the documents relating to the Lewis claim in this action.

3. Perhaps the stringent time requirements imposed on an agency with this workload are responsible, in part, for the following observation of the Oregon Court of Appeals in a case reviewing a decision by the Employment Appeals Board: "The questioning by the referee was neither thorough nor precise. The same can be said for the findings prepared both by the referee and the Appeals Board." Hickam v. Morgan, 9 Or.App. 25, 29, 495 P.2d 1243, 1245 (1972).

system. These considerations must prevail.

I would be remiss if I did not express my deep appreciation for the skill and diligence shown by the following lawyers in presenting amicus briefs: Clarence R. Kruger, Assistant Attorney General, John W. Hill, David Morthland, and Larry N. Sokol, the latter three from Portland. I also acknowledge the superior quality of both briefs and oral argument by Mr. Jensen and Mr. Marsh, attorneys for the parties.

Defendants' motion for summary judgment is denied. Plaintiff's counsel shall submit an appropriate order.